**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
WINSTON ROSE,

                            Plaintiff,

        v.

P.O. CHRISTOPHER BREUER, P.O. ROBERT
STUEBER, P.O. EDWARD TROYANO,
SUFFOLK COUNTY POLICE DEPARTMENT,
SUFFOLK COUNTY A.D.A. KATE WAGNER

                         Defendants.
-----------------------------------------------------------X

                                    **REPORT AND**
                                **RECOMMENDATION**

                  2:18-CV-00379 (GRB) (LGD)

**LEE G. DUNST**, Magistrate Judge:

Presently before the Court, pursuant to the referral of all dispositive pretrial motions from

District Judge Gary R. Brown (*see* November 22, 2022 Order), are cross-motions for summary

judgment filed by Plaintiff Winston Rose ("Plaintiff") and Defendants Police Officers

Christopher Breuer, Robert Stueber, and Edward Troyano, Suffolk County Police Department,

and Suffolk County Assistant District Attorney Kate Wagner (collectively, "Defendants") in this

42 U.S.C. § 1983 case alleging excessive force and excessive searches.  *See* Electronic Case File

Nos. ("ECF No.") 140-142.  As set forth below, the undersigned respectfully recommends that

the Court GRANT Defendants' motion for summary judgment, DENY Plaintiff's motion for

summary judgment, and DISMISS Plaintiff's complaint.

**I.    BACKGROUND**

The facts set forth below are taken from the Complaint (ECF No. 1), Defendants' Local

Civil Rule 56.1 Statement (ECF No. 140-13, "Def. 56.1 Statement"), Plaintiff's motion for

summary judgment (ECF No. 141, "Pl. Mem."), and admissible evidence submitted by the

parties.[1]

### A.    Factual Background

In or about 2015, the Suffolk County Police Department was conducting an investigation of Plaintiff and others regarding their alleged involvement with an illegal drug enterprise in Suffolk County.  *See* Def. 56.1 Statement ¶ 2.  On or about June 2, 2015, court-ordered search warrants were issued for multiple locations, including 65 Crown Street in Deer Park, 92 Horton Street in West Islip, and 259 Bay Shore Road in Deer Park, based on applications and supporting affidavits executed by Defendant Robert Stueber.  *See id.* ¶ 3; ECF No. 140-3 ("Search Warrants").  After these warrants were executed, Plaintiff was arrested and charged with multiple counts of drug-related crimes.  *See* Def. 56.1 Statement ¶ 51.  In 2016, Plaintiff pled guilty to two of those counts and his appeals were subsequently denied.  *See id.* ¶ 52.  Plaintiff remains incarcerated at this time.  *See* ECF No. 141 at 20 (Plaintiff listing his address as "Eastern NY Correctional, Box 338, Napanoch, New York").

### 1.    Plaintiff's Arrest at 92 Horton Street

In the early morning of June 5, 2015, Plaintiff was arrested at the 92 Horton Street location.  *See* Def. 56.1 Statement ¶ 8; ECF No. 140-8 at 34 ("Arrest Report").  The Arrest

---

[1] The Local Civil Rules require motions for summary judgment to attach "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civil Rule 56.1(a).  The Local Civil Rules also require the nonmovant to Defendants' summary judgment motion, here the Plaintiff, to file a statement with "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party . . . ."  Local Civil Rule 56.1(b).  Plaintiff failed to file such counter statement under Local Civil Rule 56.1.  "While *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."  *Wiggins v. Griffin*, No. 18-CV-7559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (internal quotations omitted).  While Plaintiff's opposition to Defendants' motion (ECF No. 142-3) and Plaintiff's motion for summary judgment (ECF No. 141) do not specifically address Defendants' Rule 56.1 Statement in support of their summary judgment motion, the Court exercises its discretion to consider all of Plaintiff's submissions as opposition to Defendants' Rule 56.1 Statement.  *See id.*; *Brown v. Phipps*, No. 19-CV-4356, 2021 WL 3604664, at *1 n.3 (S.D.N.Y. Aug. 12, 2021) ("[T]he Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions" even where the plaintiff did not respond to the defendants' 56.1 Statement (quoting *Wiggins*, 2021 WL 706720, at *1 n.1)).

Report lists Police Officer James C. Johnson as the "Arresting Officer." *See* ECF No. 140-8 at 34, Arrest Report. Defendant Christopher Breuer is listed as the "Reporting Officer." *See id.* The Arrest Report states that "on or about June 5, 2015, at approximately 5:01 A.M., [Plaintiff] knowingly and unlawfully possessed cocaine with intent to sell the same . . . [and] did possess a quantity of cocaine . . . which were all recovered during a search warrant." *Id.* The Offense Report for 92 Horton Street does not identify Defendants Breuer, Stueber, Troyano, or Wagner, (collectively, the "Individual Defendants") as witnesses to Plaintiff's arrest, but instead lists Detectives Frank J. Cabra and William P. Vasquez, among others. *See* ECF No. 141-6 at 12 ("92 Horton Offense Report").

Plaintiff alleges that he was physically assaulted by plainclothes detectives during his arrest at 92 Horton Street. *See* Def. 56.1 Statement ¶ 9; ECF No. 140-11 at 69:19-73:23 ("Rose Depo."). According to Plaintiff, officers broke down his bedroom door, struck him with a protective raid shield, and pinned him face-down on the living room floor. *See* Def. 56.1 Statement ¶ 9; Pl. Mem. at 2. Plaintiff alleges that he was handcuffed, punched in the back of the head, and kicked in the upper and lower body by Stueber, Breuer, and Troyano. *See* ECF No. 1-4 at 2, Complaint; Def. 56.1 Statement ¶ 10. He further alleges that detectives placed their knees on his back and struck him with walkie-talkies, flashlights, and batons. *See* Def. 56.1 Statement ¶¶ 11-12. He claims that he was also kneed in the back several times. *See id.* ¶ 13. Plaintiff alleges that, while remaining in a defenseless position, he was eventually rendered unconscious and incoherent. *See id.* ¶ 10; Pl. Mem. at 2. When he woke up, Plaintiff was in the back of a police car and was denied medical attention. *See* ECF No. 1-4 at 2.

During his deposition, Plaintiff was unable to conclusively identify that Defendants Breuer, Stueber, and Troyano were present and personally involved in this incident. *See* Def.

56.1 Statement ¶ 14.  Regarding Breuer and Stueber, Plaintiff stated that "all arresting officers, if they was present, they was involved."  *Id.*; ECF No. 140-11, Rose Depo. at 87:8-10.  Plaintiff further stated, regarding Stueber, that "if he was the arresting officer present, then that's what I put in my complaint.  That's what I'm going with, and that's it."  Def. 56.1 Statement ¶ 15; ECF No. 140-11, Rose Depo. at 88:7-10.  Plaintiff also stated, "I have it in [Stueber's] interrogatory that he was present . . . He was present, I have it right here in writing that he was present."  ECF No. 140-11, Rose Depo. at 89:16-19.  When asked by defense counsel about whether Stueber was present when he was pinned on the floor in handcuffs, Plaintiff stated that "if [Stueber] was a part of their arresting investigation team, then he's involved."  Def. 56.1 Statement ¶ 16; ECF No. 140-11, Rose Depo. at 90:6-8.  Plaintiff answered similarly regarding Troyano, stating that "if [Troyano's] a part of the arresting team of the investigation, that's what's in my complaint . . . if he is part of the investigation, he was there then—then he's part of it."  Def. 56.1 Statement ¶ 17; ECF No. 140-11, Rose Depo. at 90:13-23.  When asked that if Troyano was not present at 92 Horton Street whether he could not be one of the people that used force against him, Plaintiff stated "[o]kay, yes, that would be correct."  Def. 56.1 Statement ¶ 18; ECF No. 140-11, Rose Depo. at 91:5-11.

The Individual Defendants submit affidavits representing that they were not personally involved in Plaintiff's arrest.  Defendant Stueber stated that he was at a different location at the time the search warrants were executed.  *See* ECF No. 140-4 ¶ 5 ("Stueber Aff.").  He further clarified that he did not arrive at 92 Horton Street until all the warrants were executed and after Plaintiff had been taken into custody and transported to the First Precinct.  *See id.*  Defendant Breuer stated that, at the time of Plaintiff's arrest at 92 Horton Street, he was at another location—65 Crown Street—where a search warrant was being executed.  *See* ECF No. 140-5

¶ 4 ("Breuer Aff."). Similarly, Defendant Troyano stated that, at the time of Plaintiff's arrest at 92 Horton Street, he did not respond to that location and instead was at another location—65 Crown Street—for a short period of time before proceeding to Plaintiff's place of business—259 Bay Shore Road. *See* ECF No. 140-6 ¶¶ 4-5 ("Troyano Aff.").

However, Plaintiff submits an affidavit dated March 29, 2018 from Desiree Dietz, an alleged witness to the events at 92 Horton Street. *See* ECF No. 141-8 at 2-4 ("Dietz Aff."). Dietz claimed that she was present at 92 Horton Street when the police raided the location. *See id.* at ¶ 2. She stated that "[t]he only two Officers I could positively identify are Christopher Breuer and Robert Stueber." *Id.* Dietz represented that the officers (not necessarily Breuer and Stueber) forced Plaintiff to the floor, cuffed him, became "physically aggressive towards him for no reason at all" and were repeatedly "hitting him and putting their foot on his neck." *Id.* She stated that she saw "many different Officers becoming physically aggressive." *Id.* Notably, Dietz did not affirmatively state that Breuer or Stueber were personally involved in the excessive force. *See generally id.* Defendant Troyano was not mentioned her affidavit. *See generally id.*

### 2.    Searches of 65 Crown Street and 259 Bay Shore Road

At or about the same time as Plaintiff's arrest, members of the Suffolk County Police Department executed search warrants at 65 Crown Street and 259 Bay Shore Road. *See* ECF No. 140-3, Search Warrants; ECF No. 141-6 at 13-14 ("65 Crown Offense Report"). The Offense Report indicates that a search warrant was executed on June 5, 2015 and lists a number of officers, detectives, and emergency personnel who participated in the search. *See generally* ECF No. 141-6 at 13-14, 65 Crown Offense Report. In particular, the Offense Report lists Defendant Breuer as the "Lead Detective" and the "Reporting Officer." *Id.* Defendants Stueber and Troyano are not listed anywhere in the Offense Report. *See generally id.*

Plaintiff alleges that 65 Crown Street, a house he owned and where his parents, wife, and

children resided, was "destroyed" by Defendants.  *See* Def. 56.1 Statement ¶¶ 5-6, 26.  He claims that Defendants made holes in the walls and broke up the stairs.  *See id.* ¶ 26.  He also contends that an excavator dug up the foundation in the backyard and some of the driveway.  *See id.* ¶ 28.  Plaintiff submits photographs of the outside and inside of the premises showing the alleged damage done by Defendants.  *See* ECF Nos. 140-2 at 24-33, 141-7.  Plaintiff also claims that Defendants damaged the 259 Bay Shore Road location, a business he owns and runs, by breaking the front glass and damaging the walls and ceilings.  *See* Def. 56.1 Statement ¶ 48.

Plaintiff alleges that the Individual Defendants caused the property damage.  Plaintiff claimed that "it was the investigating officers named in his complaint . . . the officers that were there to search, all of them" that caused the damage.  Def. 56.1 Statement ¶ 30; ECF No. 140-11, Rose Depo. at 113:14-17.  He claimed that "in all of [his] paperwork, I have [the officers in his complaint] being there at 65 Crown Street."  ECF No. 140-11, Rose Depo. at 113:25-114:3.  Regarding Defendants Breuer, Stueber, and Troyano, Plaintiff claimed that "[i]f they was part of the investigation . . . they was part of the search team and they–they have them saying themselves that he was presently there and they were searching."  *Id.* at 114:9-13.  Similarly, regarding Defendant Wagner (an Assistant District Attorney), Plaintiff claims that Wagner was at both locations and caused damage because she was aware of the damage and was part of the investigation.  *See* Def. 56.1 Statement ¶¶ 46-47; ECF No. 140-11, Rose Depo. at 128:15-20.

Significantly, however, Plaintiff, during his deposition, was unable to state what specific damage each Individual Defendant caused because, among other things, Plaintiff did not personally observe the execution of the search warrants or any of the resulting damage done.  *See* Def. 56.1 Statement ¶ 27.  Plaintiff was in custody from the date of his arrest 2015 through the present and relies upon reports and pictures from his family regarding the alleged damage.  *See*

*id.* Plaintiff stated that his parents conducted their own independent investigation and googled pictures of the officers, but he could not identify what pictures his parents had seen on the Internet. *See id.* ¶¶ 36-37; ECF No. 140-11, Rose Depo. 117:15-118:7. Plaintiff's wife, Kesha Rose, stated that when she returned to 65 Crown Street from a trip on June 5, 2015, she observed her windows broken out, the inside walls and staircase damaged, the backyard dug-up, and valuable items missing and destroyed. *See* ECF No. 141-8 at 5-6 ("Wife Aff."). She stated that she was told that the Suffolk County Police Department was responsible. *See id.* She did not state who specifically caused the damage. *See id.* Similarly, Plaintiff's parents stated that the residence at 65 Crown Street was dismantled and vandalized by members of the Suffolk County Police Department. *See* ECF No. 141-8 at 7-8 ("Parents Aff."). They also did not state who specifically caused the damage. *See id.*

The Individual Defendants submit affidavits stating that they either were not present at 65 Crown Street and 259 Bay Shore Road and/or were not personally involved in causing any damage while they were there. Defendant Stueber stated that he did not participate in any of the searches that took place at 65 Crown Street or 259 Bay Shore Road. *See* ECF No. 140-4, Stueber Aff. ¶ 8. Defendant Breuer stated that, while he was present during the search at 65 Crown Street, his participation was limited to taking photographs and collecting discovered evidence. *See* ECF No. 140-5, Breuer Aff. ¶ 3. He stated that he did not cause any damage to Plaintiff's property. *See id.* Defendant Troyano stated that he arrived at 65 Crown Street after the search warrants were already under way and that he was only there for a short period of time before going to 259 Bay Shore Road. *See* ECF No. 140-6, Troyano Aff. ¶ 4. He stated that he did not participate in any of the searches at either location. *See id.* Finally, Defendant Wagner stated that she was not present during the execution of the search warrants at either 65 Crown

Street or 259 Bay Shore Road.  *See* ECF No. 140-7 ¶ 6 ("Wagner Aff.").  She stated that she toured the premises after the completion of the search and did not have authority to direct the execution of the search warrants nor did she.  *See id.*

> **B.      Procedural Background**

Plaintiff filed the Complaint on January 17, 2018, alleging excessive force and excessive searches pursuant to Section 1983.  *See generally* Complaint.  On February 15, 2019, Plaintiff filed a motion to amend the complaint (ECF No. 55), which Defendants opposed (ECF No. 62).  On June 3, 2019, Plaintiff sent a letter to Magistrate Judge A. Kathleen Tomlinson (to whom the case was previously assigned) indicating that he did not want to continue to pursue the case.  *See* ECF No. 74.  On July 3, 2019, District Judge Kiyo A. Matsumoto (to whom the case was previously assigned) terminated Plaintiff's motion to amend and scheduled a conference, on August 8, 2019, to discuss Plaintiff's request to discontinue the case.  *See* July 25, 2019 Order.  Judge Matsumoto ordered that "[i]f, after the conference, plaintiff wishes to continue with this action, he may renew his request to file an amended complaint."  *Id.*  At the August 8, 2019 conference, Plaintiff informed the Court that he wanted to continue the case.  *See* August 8, 2019 Order.  However, on March 30, 2020, Judge Tomlinson stayed the case pending Plaintiff's appeal of his criminal case in state court.  *See* March 30, 2020 Order.

On September 9, 2021, Plaintiff confirmed to the Court that his appeal had been exhausted and that he was ready to continue with discovery.  *See* ECF No. 88.  On November 4, 2022, Defendants informed the Court of their intention to move for summary judgment.  *See* ECF No. 111.  On November 22, 2022, District Judge Gary R. Brown (to whom the case was randomly reassigned from Judge Matsumoto), referred all pretrial proceedings, including any

dispositive motions to the undersigned.[2]  *See* November 22, 2022 Order.  On April 26, 2023, the undersigned set a briefing schedule for Defendants' summary judgment motion.  *See* ECF No. 125.  On May 8, 2023, Plaintiff requested that the undersigned amend the schedule to allow him to cross move for summary judgment (ECF No. 127), which the undersigned granted and set a briefing schedule for Plaintiff's summary judgment motion.  *See* May 11, 2023 Order.

On August 18, 2023, more than four years after Judge Matsumoto's order regarding Plaintiff's motion to amend his complaint, Plaintiff requested the undersigned to discontinue the summary judgment schedule and grant his motion to amend the complaint.  *See* ECF No. 138.  The undersigned denied this request, noting that "[a]t no point in that four year period--in which the parties completed discovery and the Court set the summary judgment briefing schedule with the parties' input--has Plaintiff renewed his request to amend the complaint."  August 29, 2023 Order.  Plaintiff did not file any objections to Judge Brown regarding the undersigned's ruling that denied his motion to amend the complaint.

On October 2, 2023, Defendants and Plaintiff filed their cross motions for summary judgment.  ECF Nos. 140, 141, 142.  In his summary judgment motion, Plaintiff purported to add three new officers as parties in this case—Police Officers Frank Cabra and James Johnson and Detective William Vasquez—and moved for summary judgment against them and the other original Defendants.  ECF No. 141.  He also included new claims not previously alleged in his Complaint.[3]

---

[2] The case previously had been reassigned randomly to the undersigned on June 6, 2022.

[3] The undersigned previously ruled on the motion to amend issue on August 29, 2023.  *See* August 29, 2023 Order.  The Court will not allow Plaintiff to ignore that ruling and purport to add new defendants and new claims to his summary judgment motion.  *See Kravitz v. Leis*, 803 F. App'x 547, 548 (2d Cir. 2020) ("Generally, parties may not amend their complaints through their submissions on summary judgment.").  Therefore, the Court will only consider the claims as originally alleged in the Complaint in deciding on both summary judgment motions against the originally named Defendants—the Suffolk County Police Department, Officers Stueber, Breuer, and Troyano, and Assistant District Attorney Kate Wagner.  *See Byrd v. KTB Cap. LLC*, No. 16-CV-6017, 2019 WL

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine dispute of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) (internal quotations omitted). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotations omitted). Regarding issues for which the burden of proof falls on the nonmoving party, the movant can merely "point[] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Id.* (internal quotations and alterations omitted). Once the moving party carries its burden, "the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." *McKinney*, 49 F.4th at 738 (internal quotations omitted). In this analysis, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 518 (2d Cir. 2018). Critically, "[t]he role of the district court on summary judgment is 'not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *McKinney*, 49 F.4th at 738 (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)).

### B.    Plaintiff's *Pro Se* Status

A court considering a motion for summary judgment must afford "special solicitude" to a *pro se* litigant. *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 522 (S.D.N.Y. 2015) (quoting

---

652529, at *4 (W.D.N.Y. Feb. 15, 2019) (refusing to consider any new claims asserted at the summary judgment stage).

*Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988)).  To that end, the Court must "liberally construe" Plaintiff's filings and "read[] such submissions to raise the strongest arguments they suggest."  *McLeod v. Jewish Guild for The Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).  The duty to liberally construe those filings, however, "is not the equivalent of a duty to re-write [them]."  *Williams v. Richardson*, 425 F. Supp. 3d 190, 201 (S.D.N.Y. 2019) (internal quotations omitted).  This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."  *McLeod*, 864 F.3d at 156 (quoting *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)).  Nonetheless, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *E.g.*, *Peavey v. A. Rosenblum, Inc.*, 793 F. Supp. 2d 590, 594 (E.D.N.Y. 2011) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *see Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law.").  Therefore, construing Plaintiff's filings liberally, Plaintiff must still satisfy "the usual requirements of summary judgment."  *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (internal quotations omitted).

### C.    Plaintiff's Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statue, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.  42 U.S.C. § 1983.  "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for

enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 159 (2d Cir. 2005); *see Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 511 (E.D.N.Y. 2021) ("Section 1983 does not itself create substantive rights; it offers a method for vindicating federal rights elsewhere conferred.") (internal quotations omitted).   "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019).

## III.    DISCUSSION

Defendants' main argument in support of their summary judgment motion in favor of the Individual Defendants is that Plaintiff cannot establish their personal involvement as required under Section 1983.  ECF No. 145 at 5-8, 10-12 ("Def. Mem.").  Defendants also argue that the searches were executed pursuant to a valid search warrant (Def. Mem. at 8-10) and that Police Officers Stueber, Breuer, and Troyano are entitled to qualified immunity and Assistant District Attorney Wagner is entitled to prosecutorial immunity (Def. Mem. at 12-18).[4]  They also argue that Plaintiff is unable to establish liability on behalf of the municipality—Suffolk County.  ECF No. 148 at 5-8.  Plaintiff opposes Defendants' claim that the Individual Defendants were not personally involved, and additionally attempts to amend his Complaint by arguing that it was Officers Frank Cabra, William Vasquez, and James Johnson that should be held liable for excessive force and Defendants Breuer, Stueber, and Troyano should be held liable under a theory of failing to intervene.  *See* Pl. Mem. at 5-9.[5]

---

[4] Given that the Court recommends granting Defendants' motion for summary judgment on the grounds discussed below, the Court need not address the remaining arguments by the Defendants in support of their motion for summary judgment.  *See, e.g., Brady v. Top Ships, Inc.*, No. 17-CV-4987, 2019 WL 3553999, at *17 (E.D.N.Y. Aug. 5, 2019), *aff'd sub nom. Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020) (where the plaintiff failed to state a claim, the "Court need not address defendants' other arguments").

[5] For the reasons stated above (*see supra* Part I.B n.3), the Court will only address the claims and

A.      **Claims Against the Individual Defendants**

In order to survive summary judgment, a plaintiff must establish the personal

involvement of all of the individually named defendants in a Section 1983 case alleging

constitutional deprivations.  *See Ki v. City of New York*, No. 20-CV-4343, 2024 WL 245303, at

\*2 (E.D.N.Y. Jan. 23, 2024); *see also Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020).[6]

Accordingly, "[a] plaintiff must allege the direct or personal involvement of each of the named

defendants in the alleged constitutional deprivation."  *Fonville v. Yu*, No. 17-CV-7440, 2021 WL

3145930, at \*12 (E.D.N.Y. July 26, 2021).  Furthermore, there is no "supervisory liability," and

thus, a plaintiff must plead that each government-official defendant through the official's "own

individual actions, has violated the Constitution."  *Gutierrez v. New York*, No. 18-CV-3621,

2021 WL 681238, at \*5 (E.D.N.Y. Feb. 22, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609,

616 (2d Cir. 2020)).

As set forth herein, the Court finds that the Individual Defendants are entitled to

summary judgment on all claims asserted by Plaintiff.

1.      Excessive Force Claims

a)      *Christopher Breuer*

There is no evidence that sufficiently establishes a genuine issue of material fact that

Defendants stated in Plaintiff's original Complaint—the Section 1983 claims of excessive force and excessive searches against the Suffolk County Police Department and individuals Breuer, Stueber, Troyano, and Wagner.  The Court will not address any other claims mentioned in Plaintiff's motion for summary judgment, including the claims for excessive force against Officers Frank Cabra, William Vasquez, and James Johnson (Pl. Mem. at 5-7); the failure to intervene claims against Breuer, Stueber, and Troyano (Pl. Mem. at 7-9); claims against Wagner related to a Child Protective Services proceeding initiated against Plaintiff and Plaintiff's wife (Pl. Mem. at 11-12), fabrication of evidence, and denial of the right to a fair trial (Pl. Mem. at 13, 15, 18).

[6] Plaintiff does not specify whether his Section 1983 claims are directed at the Individual Defendants in their individual or official capacities.  In any event, Section 1983 does not provide a cause of action to sue officials in their official capacities.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-71 (1989).  Therefore, the undersigned analyzes the Section 1983 claims as seeking damages from the Individual Defendants in only their individual capacities.  *See Ki*, 2024 WL 245303, at \*2 (adopting this approach).

Defendant Breuer was personally involved in the alleged excessive force against Plaintiff. Indeed, Breuer swears in his affidavit that he was present at another location—65 Crown Street—at the time of Plaintiff's arrest at 92 Horton Street, and thus, could not have been personally involved. *See* ECF No. 140-5, Breuer Aff. ¶ 4. This claim is corroborated by the Arrest Report, which lists Officer James C. Johnson as the arresting officer and Christopher Breuer only as the "Reporting Officer." *See* ECF No. 140-8 at 34, Arrest Report. Additionally, Breuer's name does not appear anywhere in the 92 Horton Street Offense Report. *See* ECF No. 141-6 at 12, 92 Horton Offense Report.

At his deposition, Plaintiff could not definitively state whether Breuer was personally involved in his arrest. When asked if Breuer was one of the people using force against him, Plaintiff stated, "[w]ell, I'm just going to say that he was one of the officers in my complaint." ECF No. 140-11, Rose Depo. at 85:25-86:2. When pressed further, Plaintiff said, "[i]f he was present, then I would say, yes." *Id.* at 86:12-13. However, in his motion for summary judgment, Plaintiff seemingly contradicts and abandons his original Complaint by now claiming that Breuer "participated in assault by *observing* fellow officers repeatedly striking plaintiff head and body" and claims that Breuer should be liable for "*failing to intervene*," and instead, claims Officers Cabra, Vasquez, and Johnson be liable for excessive force. Pl. Mem. at 7-8 (emphasis added).

Plaintiff relies upon a single piece of evidence to support the claim in Plaintiff's original complaint that Breuer was personally involved in the excessive force—specifically, a witness affidavit from Desiree Dietz. Aside from Defendants' argument about the suspect format of the affidavit (the second page is in a different font than the first and third page) (*see* ECF No. 148 at 7), the statements from this affidavit alone are not enough to create a genuine issue of material fact because she does not affirmatively state that Breuer was personally involved in the excessive

force.  *See* ECF No. 141-8 at 2-4 Dietz Aff. ("I saw many different Officers becoming physically aggressive.").  The fact that she states that she could "positively identify" Breuer at the location does not create an issue of *material* fact because she does not directly state that Breuer was personally involved in using excessive force against Plaintiff.  *See generally id.*  Claiming that Breuer was there is not the same as stating that he was personally involved in the alleged excessive force.

The Court finds that Dietz's vague affidavit combined with Plaintiff's vague answers in his deposition, where he could not affirmatively state that Breuer was personally involved in the excessive force, do not create a genuine issue of material fact sufficient to survive summary judgment.  *See Cestaro v. Prohaska*, No. 22-CV-9444, 2023 WL 4425737, at *2 (S.D.N.Y. July 7, 2023) ("A conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact."); *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, No. 18-CV-3572, 2023 WL 6516994, at *1 n.3 (E.D.N.Y. Oct. 4, 2023) (noting that plaintiff could not "simply point to their own declarations to place a fact in dispute").

Therefore, for the reasons stated above, the Court recommends granting Defendants' summary judgment motion on the excessive force claim against Defendant Breuer.  *See Gutierrez*, 2021 WL 681238, at *6 (granting summary judgment where "based on the undisputed facts, there [was] no evidence that they participated in, and were therefore personally involved with the arrest"); *Clark v. Travelers Companies, Inc.*, No. 16-CV-2503, 2020 WL 473616, at *9 (E.D.N.Y. Jan. 29, 2020) (granting summary judgment, noting that "[c]ourts routinely reject self-serving affidavits of this sort as bases for establishing a genuine dispute of material fact").

b)    *Robert Stueber*

There is no evidence that sufficiently establishes a genuine issue of material fact that

Defendant Stueber was personally involved in the alleged excessive force against Plaintiff.  In his affidavit, Stueber swears that he was in the wire room during the arrest and only arrived 92 Horton Street after Plaintiff had already left, and thus was not personally involved in the arrest. *See* ECF No. 140-4, Stueber Aff. ¶ 5.  This is corroborated by the fact that the Arrest Report and the 92 Horton Street Offense Report do not contain Stueber's name.  *See* ECF No. 140-8 at 34, Arrest Report; ECF No. 141-6 at 12, 92 Horton Offense Report.

Plaintiff could not definitively state that Stueber was personally involved in the arrest. During his deposition, when asked if Stueber was one of the officers involved in the alleged attack, Plaintiff stated, "all arresting officers, if they was present, they was involved."  ECF No. 140-11, Rose Depo. at 87:8-10.  When asked to clarify, Plaintiff similarly stated, "[a]gain, if [Stueber] was the arresting officer present, then that's what I put in my complaint.  That's what I'm going with, and that's it." *Id.* at 88:7-10.  Plaintiff claimed that he had it in an interrogatory that Stueber was present (*id.* at 89:16-19), but Stueber in fact only stated that he went into the house *after* the warrants were executed and Plaintiff had already been taken into custody.  *See* ECF No. 140-4, Stueber Aff. ¶ 5.  Furthermore, similar to Breuer, Plaintiff's motion for summary judgment now contradicts this deposition testimony and the Complaint by forgoing the excessive force claim against Stueber and instead alleging a failure to intervene claim.  *See* Pl. Mem. At 9.  And the only piece of evidence that could support Plaintiff's original claim that Stueber was involved in the excessive force is the Dietz affidavit.  As stated above, however, this single piece of evidence that does not affirmatively state that Stueber was personally involved in the excessive force, is unsupported by other evidence, and contradicted by Plaintiff's deposition and motion for summary judgment.  This is not enough to create a genuine dispute of material fact sufficient to survive summary judgment.  *See Cestaro*, 2023 WL 4425737, at *2 (granting

summary judgment where there were only conclusory allegations).

Therefore, for the reasons stated above, the Court recommends granting Defendants' summary judgment motion on the excessive force claim against Defendant Stueber.  *See Roman v. City of New York*, No. 17-CV-2697, 2020 WL 1516336, at *6 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, No. 17-CV-2697, 2020 WL 1503639 (S.D.N.Y. Mar. 29, 2020) (granting summary judgment where plaintiff "adduce[d] no evidence to dispute Defendant's evidence, comprised of testimony, NYPD records . . . showing that [defendant] did not participate in Plaintiff's arrest").

### c)    Edward Troyano

Finally, there is no evidence that establishes a genuine issue of material fact that Defendant Troyano was personally involved in the alleged incident during Plaintiff's arrest.  In fact, Troyano swears that he was present at another location—65 Crown Street—at the time of Plaintiff's arrest at 92 Horton Street.  *See* ECF No. 140-6, Troyano Aff. ¶¶ 4-5.  Additionally, Troyano's name does not appear anywhere on the Arrest Report or on the 92 Horton Street Offense Report.  *See* ECF No. 140-8 at 34, Arrest Report; ECF No. 141-6 at 12, 92 Horton Offense Report.  Testifying in his deposition, Plaintiff used circular reasoning in claiming that because Troyano was named in his Complaint and he was part of the investigation, Troyano necessarily was personally involved in the arrest and thus should be liable for any constitutional violations.  *See* Def. 56.1 Statement ¶ 17; ECF No. 140-11, Rose Depo. at 90:13-23.  However, this does not create an issue of material fact to withstand summary judgment.  *See Chambers v. Toulon*, No. 22-CV-5463, 2022 WL 11729696, at *3 (E.D.N.Y. Oct. 20, 2022) ("'[B]ald assertions and conclusions of law' are insufficient to establish personal involvement." (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996))).  Therefore, the Court recommends granting Defendants' summary judgment on Plaintiff's excessive force claim against Defendant Troyano.

*See Gutierrez v. New York*, No. 18-CV-3621, 2021 WL 681238, at *6 (E.D.N.Y. Feb. 22, 2021) (granting summary judgment where "based on the undisputed facts, there [was] no evidence that they participated in, and were therefore personally involved with the arrest").

2.    Excessive Search Claims

Plaintiff alleges that the Individual Defendants caused property damage at the various locations where searches were executed pursuant to court-approved search warrant. *See* Def. 56.1 Statement ¶ 9. Defendants argue that Plaintiff has not established a genuine issue of material fact that any of the Individual Defendants were personally involved in causing any alleged damage. Having found nothing in the evidence to contradict this argument, the Court agrees with Defendants, and therefore, recommends dismissal of all excessive search claims.

In their sworn affidavits, Defendants claim that they were either not present during the searches, did not participate in the searches, or participated in a limited capacity. Defendant Stueber claims that he was never present during any of the searches at either location. *See* ECF No. 140-4, Stueber Aff. ¶ 8. Similarly, Defendant Wagner claims that she was not present during the execution of the searches and only toured the premises after their completion. *See* ECF No. 140-7, Wagner Aff. ¶ 6. Furthermore, while Defendants Breuer and Troyano state that they were present at some point during the execution of the search warrants, they deny that they were personally involved in causing any damage to Plaintiff's properties. Defendant Breuer claims that his participation was limited to taking photographs and collecting already discovered evidence. *See* ECF No. 140-5, Breuer Aff. ¶ 3. Similarly, Defendant Troyano claims that he did not participate in any of the searches. *See* ECF No. 140-6, Troyano Aff. ¶ 4. The affidavits are corroborated by the 65 Crown Street Offense Report, which only lists Defendant Breuer as present during the search. *See* ECF No. 141-6, at 13-14, 65 Crown Offense Report.

Plaintiff submits nothing in the record to counter Defendants' claims. First, it is

undisputed that Plaintiff did not witness any of the searches or subsequent damage himself, as he was in custody during (and since) the execution of the search warrants. *See* Def. 56.1 Statement ¶ 27. Thus, Plaintiff has had to rely on secondhand accounts from his parents and his wife. Significantly, however, the affidavits from Plaintiff's wife and parents do not contain any claims that any of the Individual Defendants were personally involved in causing the alleged damage. *See generally* ECF No. 141-8 at 5-8, Wife Aff., Parents Aff. Additionally, Plaintiff's vague and conclusory deposition testimony regarding the personal involvement of the Individual Defendants in the searches cannot establish a genuine issue of material fact sufficient to survive summary judgment. *See Culpepper v. Toulon*, No. 21-CV-6553, 2023 WL 6460887, at *4 (E.D.N.Y. Oct. 4, 2023) (dismissing Section 1983 claims where "[p]laintiff's conclusory and speculative allegations" were "insufficient to establish personal involvement").

Therefore, because there exists no genuine issue of material fact as to the direct personal involvement of the Individual Defendants in the alleged damage during the searches, the Court recommends granting Defendants' summary judgment on the Section 1983 excessive search claims. *See, e.g.*, *Matteo v. Cnty. of Nassau*, No. 15-CV-6880, 2023 WL 5310587, at *15 (E.D.N.Y. Aug. 1, 2023), *report and recommendation adopted*, No. 15-CV-6880, 2023 WL 5310874 (E.D.N.Y. Aug. 17, 2023) (granting summary judgment where plaintiff was "unable to point to an individual directly responsible for the alleged injuries"); *Belton v. Wydra*, No. 17-CV-2006, 2021 WL 1056770, at *5 (D. Conn. Mar. 18, 2021) (granting summary judgment where Plaintiff "offer[ed] no opposition to [defendants'] contention that [plaintiff] ha[d] not alleged the personal involvement of [defendant] in the alleged unreasonable search"); *see also New Falls Corp. v. Soni*, No. 16-CV-6805, 2024 WL 1241982, at *6 (E.D.N.Y. Mar. 22, 2024) ("A dispute is only 'genuine' where the evidence is such that a reasonable jury could decide in

the non-movant's favor . . . . It is well-established that naked efforts to stir up doubt without any basis in the evidentiary record are insufficient . . . . Taken as a whole, the record could not lead a jury to find [for the moving party].").

### B.    Claim Against Suffolk County Police Department

Plaintiff seeks to hold the Suffolk County Police Department liable for the actions of the officers under a theory of *respondeat superior*.  *See* Pl. Mem. at 4-5.  For the reasons set forth below, the Court recommends granting Defendants' summary judgment for Defendant Suffolk County Police Department.[7]

First, the Suffolk County Police Department cannot be sued directly because it is an "'administrative arm,' which does 'not have a legal identity separate and apart from the municipality.'"  *Pena v. Suffolk Cnty. Police Dep't*, No. 21-CV-2496, 2021 WL 3848299, at *2 (E.D.N.Y. Aug. 27, 2021) (quoting *Spagnuolo v. Suffolk Cnty.*, No. 12-CV-4327, 2017 WL 4326510, at *2 (E.D.N.Y. Sept. 28, 2017)).  Given, Plaintiff's *pro se* status, however, the Court *sua sponte* construes Plaintiff's claim as against Suffolk County.  *Id.* (adopting approach).

Next, "[i]t is well-established that a municipality, like the County, cannot be held liable under Section 1983 on a respondeat superior theory."  *Id.*  Under *Monell v. Dep't of Soc. Servs. of N.Y. City*, 436 U.S. 658, 691 (1978), in order "to state a claim against a municipality under Section 1983, 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.'"  *Pena*, 2021 WL 3848299, at *2 (quoting *Tafolla v. Cnty. of Suffolk*, No. 17-CV-4897, 2021 WL 3675042, at *10 (E.D.N.Y. Aug. 19, 2021)).  To establish the existence of a municipal policy or custom, the plaintiff must allege:

---

[7] As an initial matter, because the Court above found that none of the Individual Defendants are liable, Plaintiff's *Monell* claim should be foreclosed.  *See Bonilla v. Jaronczyk*, 354 F. App'x 579, 582 (2d Cir. 2009) (foreclosing *Monell* claim where plaintiff suffered no constitutional violation at the hands of the individual defendant).  Nevertheless, the Court evaluates Plaintiff's *Monell* claim and recommends dismissal for the additional reasons set forth below.

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal policymaking officials, *i.e.*, officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread as to practically have the force of law, or that was so manifest as to imply the constructive acquiescence of senior policy-making officials; or (4) that a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates.

*Avant v. Miranda*, No. 21-CV-974, 2021 WL 1979077, at *3 (E.D.N.Y. May 18, 2021) (internal quotations and citations omitted).

Here, Plaintiff has not presented sufficient evidence to establish a genuine issue of material of fact that Suffolk County has a municipal policy or custom that caused the alleged violations. Plaintiff argues that there exists a policy or custom based on "acts so widespread [that there can be] inferred evidence of (*Deliberate Indifference*) of Supervisory officials." Pl. Mem. at 5. As evidence of a widespread practice, Plaintiff cites nine cases of excessive force, spanning from 1991 through 2021, against Suffolk County Police Department officers (ECF No. 141-3), as well as the Department's Directive on the Use of Physical Force (ECF No. 141-4).[8]

"To demonstrate a practice is sufficiently widespread and crystalized to constitute a custom under *Monell*, 'a plaintiff must prove that the custom at issue is permanent and well-settled.'" *Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *19 (S.D.N.Y. July 19, 2022) (quoting *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012)). Courts in this district have held that citations to lawsuits "do not alone establish a custom or practice that is widespread and persistent, *particularly if the lawsuits did*

---

[8] Plaintiff includes the Suffolk County Police Department's Directive on the Use of Physical Force without any further context or explanation. This alone does not establish municipal liability. *See Torres v. Vasta*, No. 18-CV-8706, 2019 WL 4640247, at *5 (S.D.N.Y. Sept. 24, 2019) (dismissing *Monell* claim where the allegations were "too conclusory" and included "no factual allegations supporting an inference that such a 'common practice and custom' existed"); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff did not provide "any supporting factual detail about alleged deficiencies in the training program").

*not result in an adjudication of liability*." *Id.* (emphasis in original) (quoting *Bethune v. Westchester Cnty.*, No. 18-CV-3500, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020)).

A closer examination of the lawsuits cited by Plaintiff reveal that only one out of nine resulted in a "favorable verdict" to Plaintiff. Three cases involved excessive force claims against police officers in other locations and not Suffolk County. *See Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 492 (E.D.N.Y. 2021) (excessive force claim against Nassau County police officer);[9] *Graham v. City of New York*, 928 F. Supp. 2d 610, 614 (E.D.N.Y. 2013) (New York City police officers); *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 16 (E.D.N.Y. 2012) (Town of Hempstead police officers and Nassau County Sheriff's Department). Three additional cases cited by Plaintiff resulted in a finding of no liability regarding the excessive force claims against Suffolk County officers. *See Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 587 (E.D.N.Y. 2013), *aff'd in part, dismissed in part*, 594 F. App'x 723 (2d Cir. 2014) (granting summary judgment in favor of the officer); *Torino v. Rieppel*, No. 07-CV-1929, (E.D.N.Y. Apr. 15, 2010), Dkt. No. 40 Judgment (jury verdict in favor of defendants); *Cox v. Cnty. of Suffolk*, 780 F. Supp. 103, 109 (E.D.N.Y. 1991) (granting summary judgment on excessive force claim). Two cases cited by Plaintiff are still pending in the District. *See Est. of Jackson by Jackson v. Cnty. of Suffolk*, No. 12-CV-1455, 2019 WL 3253063 (E.D.N.Y. July 19, 2019); *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275 (E.D.N.Y. 2018). Plaintiff, however, relies upon one successful lawsuit from 2013, where a jury found two Suffolk County police officers liable for excessive force and awarded compensatory damages in the amount of $20,000. *See Zhiwen Chen v. Cnty. of Suffolk*, 927 F. Supp. 2d 58, 60 (E.D.N.Y. 2013).

---

[9] In *Moroughan*, the only excessive force claim asserted was against a Nassau County police officer. Suffolk County detectives and officers were included under Section 1983 false arrest, malicious prosecution, conspiracy, and due process claims in that case. *See id.* at 496.

The existence of one successful lawsuit from 2013 is not sufficient to establish a widespread practice that would put the County on notice of the need to act. *See Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *21 (S.D.N.Y. July 19, 2022) ("The existence of one lawsuit finding liability in two decades and many more that have come up short, notwithstanding the existence of two additional ongoing suits that have yet to make any investigative findings, 'does not strike th[e] Court as enough to plausibly allege an obvious need to act on the part of [the municipality].'" (quoting *Bethune v. Westchester Cnty.*, No. 18-CV-3500, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020))).  Therefore, the Court recommends dismissal of the *Monell* claim against Suffolk County.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends granting Defendants' summary judgment motion, denial of Plaintiff's summary judgment motion, and dismissing all claims against Defendants with prejudice.[10]

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Brown.  FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS.  *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian*

---

[10] Dismissal of the aforementioned claims with prejudice is appropriate because further amendment could not remedy the relevant deficiencies identified above.  *See Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 297 (2d Cir. 2022) (affirming dismissal of futile claim with prejudice).

*Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995). Defense counsel is directed to serve a copy of this Report and Recommendation on Plaintiff and file proof of service on ECF.

**SO ORDERED:**

Dated:     Central Islip, New York
           April 16, 2024

s/ Lee G. Dunst

**LEE G. DUNST**
United States Magistrate Judge